IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DANIEL KULL, as natural guardians of minor )
Child, C.E.K., et al., )
        Plaintiffs, )
)
v. ) Case No. 2:24-cv-002380
)
VALOR NETWORK, INC. and )
SCOTT HABAKUS, D.O. )
        Defendants. )

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE EXPERT TESTIMONY OF LARAE COPLEY, M.D.**

**COME NOW** Plaintiffs and respectfully request the Court to deny the Defendant's motion for an order excluding the testimony of Dr. LaRae Copley. Plaintiffs present the following response and memorandum in opposition.

Plaintiffs respectfully submit this memorandum in opposition to the motion filed by Defendant, Valor Network, Inc., seeking to exclude the testimony of Dr. LaRae Copley, M.D., as Plaintiffs' expert in the above-captioned matter. The bases for Dr. Copley's opinions are detailed in the accompanying exhibits to this response and memorandum. The deposition testimony by Dr. Copley is critical for the court's determination under *Daubert*. The deposition is in the record and was attached to the Motion to Exclude her testimony by the Defendant, Valor Network, Inc. Plaintiffs proffer her deposition as part of their argument; however, Plaintiffs will not attach it here as it is already in the record provided by the Defendant.

Dr. Copley's credentials, (Exhibit A, Dr. Copley's CV) methodology, and testimony satisfy, if not surpass, the requirements set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Her opinions are both reliable and

1

relevant, providing substantial assistance to the trier of fact regarding the mental health consequences associated with orthopedic trauma in a pediatric patient as presented by this case.

There exists no controlling authority mandating that Dr. Copley opine specifically on the mental health impact of an elbow injury as opposed to the aggregate effects of all consequential injuries. During direct examination by Mr. Burge, Dr. Copley was asked whether she was offering "any opinions with respect to how any alleged deviation in the medical standard of care might have caused or contributed to CEK's psychological harm, true?" Dr. Copley responded: "True. I'm offering only opinions on the impact of his current physical state and its history, not whether or not that was the standard of care." (Copley Deposition, page 68, lines 2-10). Accordingly, Dr. Copley is qualified to assess the psychological effects experienced by CEK resulting from the malpractice of Dr. Habakus and Valor Network, Inc., without rendering an opinion on whether there was a breach of the medical standard of care in diagnosing the injury.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF FACTS**

Plaintiffs agree with Defendant, Valor Network, Inc.'s Statement of Facts numbered 1 through 13.

Regarding Defendant's Statement of Facts number 14, Dr. Copley testified that the "methodology" she used was a "clinical interview", which "All forensic psychiatrists would do" in conducting an evaluation. (Copley Deposition, page 142, lines 7-25 and page 143, lines 1-10).

Plaintiffs agree with Defendant, Valor Network, Inc.'s Statement of Facts numbered 15 and 16.

Regarding Defendant, Valor Network, Inc.'s Statement of Facts numbered 17 through 20 Dr. Copley testified at length with regard to the practice of not recording patient interviews. (Copley Deposition, page 143, lines 11-25, page 144, lines 1-25, page 145, line1-25, and page

146, line 1-12). Dr. Copley further testified that she has participated in one audio recorded interview which was requested, but that recording was made after "After we put forth some understandings of what was going to happen". (Copley Deposition, page 146, lines 13-25 and page 147, lines 1-3). Defendant, Valor Network, Inc., attempts to paint a picture of Dr. Copley acting nefariously. In fact, she utilized the well-established methodology of interviewing CEK and his mother, without a video or audio recording, analyzing and evaluating CEK.

Plaintiffs agree with Defendant, Valor Network, Inc.'s Statement of Facts number 21.

Regarding the extensive testimony of CEK which is quoted in Defendant, Valor Network, Inc.'s Statement of Facts number 22, the findings and opinions of Dr. Copley are questions for the trier of fact and subject to cross-examination. The testimony of a 12 year boy during a deposition in comparison to statements and facts communicated to Dr. Copley are not pertinent to determining the qualification of Dr. Copley to testify as an expert. The education and training of Dr. Copley are both impressive and compelling.

Plaintiffs agree with Defendant, Valor Network, Inc.'s Statement of Facts numbered 23 and 24.

## ARGUMENTS

A.  **Dr. Copley's Qualifications as an Expert**

Defendant, Valor Network, Inc., contends that Dr. Copley is unqualified to opine on the psychiatric sequelae of pediatric orthopedic trauma. Defendant in its brief mentions a "Dr. Day" twice, the first is on page 12 and the second is on page 15. There is not a "Dr. Day" involved as a witness in this matter. The mention of a "Dr. Day" are likely "typos" which presumably originated in a previous brief of counsel for the Defendant, Valor Network, Inc. The error would not be significant and would not be mentioned in this brief if Defendant's brief did not also

include misstatements regarding the background of Dr. Copley. Dr. Copley's CV updated to the present time documents her qualification and training as a psychiatric expert. (Exhibit A) Contrary to the Defendant's statements, Dr. Copley has never been a board certified child abuse pediatrician, she has never been employed by any State of Oklahoma agency and she has not seen one thousand (1,000) children a year who were victims of child abuse. Dr. Copley did serve as the Chief of Psychiatry for The Ohio State University from 2014 to 2022. Dr. Copley has testified three times as a psychiatric expert, once in a deposition and twice in court. (Exhibit B).

Contrary to the assertion of the Defendant, *Daubert* does not require Dr. Copley to have been previously qualified as an expert "about the effect of an orthopedic injury on a child" to allow her testimony regarding the psychiatric impact of CEK's injury and debilitation. Dr. Copley explained her findings and opinions regarding CEK in her report. (Exhibit E, Dr. Copley's Report). Dr. Copley supported her report with two learned articles, "Stronger Athlete Identity is a Risk Factor for More Severe Depressive Symptoms After Musculoskeletal Injury in Pediatric Athletes" (Exhibit C) and "The Long-Term Impact of Childhood Disability on Mental Health Trajectories in Mid-to Late-Life". (Exhibit D).

To qualify as an expert under Rule 702 a witness must possess "knowledge, skill, experience, training, or education" relevant to the subject matter of the testimony (Fed. R. Evid. 702). Dr. Copley is a licensed medical doctor with board certification in psychiatry and substantial training in both adult and child psychiatry, including clinical experience working with children and adolescents experiencing mental health symptoms resulting from physical injuries and life stressors. See *Holbrook v. Lykes Bros. S.S. Co*., 80 F.3d 777, 782 (3d Cir. 1996) (finding that "most courts have held that a broad range of knowledge, skills, and training qualify an expert as such").

4

Courts have consistently found that psychiatrists are qualified to testify about the psychological impacts of physical trauma, even if their primary focus has not been orthopedic injury per se. (*Cooper & Pogge v. Nelson & Co*., 211 F.3d 1008, 1019 (7th Cir. 2000), (plaintiff suffered chronic pain syndrome and this condition was caused by his fall)..( each physician relied on Mr. Cooper's statements about his past medical history as the basis for a diagnosis) at page 1019.

**B.      The Reliability of Dr. Copley's Methodology**

Defendant, Valor Network, Inc., contends that Dr. Copley's methodology is unreliable and unsupported by scientific literature. This mischaracterizes both her report and the applicable legal standard. The *Daubert* factors are flexible and do not constitute a rigid checklist. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999). Courts have recognized that methodologies in psychiatry and psychology, which frequently involve clinical interviews and medical record review, meet reliability standards, even if they do not precisely mirror the methods of hard sciences. See *United States v. Brownlee*, 744 F.3d 479, 485 (7th Cir. 2014) ("Clinical interview and review of medical records are accepted practices in the field of psychiatry."). *Smith v. Cummings*, 445 F.3d 1254 (10th Cir. 2006): The Tenth Circuit reviewed an inmate's §1983 claim involving psychiatric expert testimony and reiterated that accepted clinical practices—including interviews and medical record reviews—are appropriate bases for expert opinions. The court noted that the reliability of these methods is well established in the psychiatric community.

Case law demonstrates a consistent recognition of the admissibility of psychiatric expert testimony when supported by appropriate qualifications and reliably applied methodologies within the field.  Dr. Copley's extensive clinical background, experience with pediatric patients, and forensic psychiatric training meet—if not exceed—the threshold under Rule 702.

The Ninth Circuit acknowledged the admissibility of psychological and psychiatric expert

opinions based on clinical evaluation, experience, and accepted diagnostic criteria, even where precise measurement is not possible. *United States v. Finley*, 301 F.3d 1000 (9th Cir. 2002). In *Finley*, the court said "Dr. Wicks relied on accepted psychological tests, from which he drew sound inferences, and he took a thorough patient history, including meeting with Finley's wife and observing Finley's behavior…Finally, Dr. Wicks did not use any experimental techniques in his evaluation of Finley and he did not deviate in any way from his normal practice of conducting psychological evaluations. Thus, we reject the government's argument. Citing *United States v. Charley*, 189 F.3d 1251 (10th Cir. 1999); *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993); *United States v. Benson*, 941 F.2d 598, 604-05 (7th Cir. 1991); and *Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987).

The plaintiff contends that courts broadly recognize the admissibility of psychiatric expert testimony that is grounded in established clinical practices, including interviews, medical record review, and professional experience, provided the testimony is relevant and helpful to the trier of fact. Challenges to the scope, methodology, or weight of psychiatric expert testimony generally go to the weight, not the admissibility, of the evidence. *Cooper* reaffirmed that clinical methodologies, even if not laboratory-based, can meet *Daubert's* reliability threshold when applied appropriately. *Cooper v Nelson* (supra) reaffirmed "The proper method of attacking evidence that is admissible but subject to doubt is to cross-examine vigorously, to present contrary evidence, and to give careful instructions on the burden of proof" *Daubert*, 509 U.S. at 596. See also *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 n.10 (5th Cir. 1999); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999); *Freeman v. Case Corp.*, 118 F.3d 1011, 1017 (4th Cir. 1997), cert. denied, 522 U.S. 1069 (1998).

Dr. Copley conducted a clinical interview with the patient and his mother, reviewed

relevant medical and educational records, and relied on her professional training and experience in diagnosing an adjustment disorder. These are established, peer-accepted methods in psychiatric diagnosis (see American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 5th Ed. (DSM-5-TR, pages 51-52, 2022). The DSM-5 expressly recognizes that diagnosis may be based on clinical evaluation, not solely on psychometric testing or laboratory data. (Exhibit G)

Moreover, the limitations or gaps in the data—such as the evolving nature of the patient's medical condition—go to the weight of the testimony, not its admissibility. See *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking admissible evidence."). *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878 (10th Cir. 2005).

**C.     The Relevance and Helpfulness of Dr. Copley's Testimony**

Contrary to Defendant's assertions, Dr. Copley's testimony will aid the trier of fact in understanding whether, and to what extent, the events at issue caused or contributed to the Plaintiff's mental health symptoms. Adjustment disorder is a clinically recognized response to significant stressors, including medical trauma and disruption of routine activities, particularly in children (see DSM-5-TR, supra at 51-52);

The fact that some of Dr. Copley's findings are based on subjective reports from the patient and parent is not a bar to admissibility; psychiatric diagnoses frequently rely on patient interviews and collateral information. See *Finlay,* supra.  Comparable standards in the Tenth Circuit can be found in *Bitler v. A.O. Smith Corp.,* 400 F.3d 1227, 1233 (10th Cir. 2004), where the court reaffirmed that challenges to the factual basis or methodology of an expert's opinion generally go to the weight of the evidence rather than its admissibility, reflecting *Daubert's*

flexible approach to expert testimony.

**D.     The General Acceptance and Peer Review of Clinical Psychiatry**

Psychiatric diagnoses and expert testimony, including adjustment disorder in pediatric settings, are generally accepted in the medical and scientific community. Dr. Copley cites literature and applies criteria from the DSM-5-TR which demonstrates adherence to the prevailing standards of her field.  See *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1234 (5th Cir. 1986). (psychiatrists' expert opinion based on clinical experience and DSM criteria is generally accepted). The absence of peer-reviewed studies specifically on elbow injuries and adjustment disorder does not undermine the broader scientific acceptance of the methodology. As the Supreme Court stated in *Daubert*, the focus is on "principles and methodology, not on the conclusions that they generate." *Daubert,* 509 U.S.at 595.

**E.  Addressing Defendant's Specific Critiques**

Dr. Copley's report draws an explicit connection between CEK's physical injury, his resulting loss of function, and the emergence of psychological symptoms. Clinical reasoning is a standard component of psychiatric assessment (DSM-5-TR at 21).  In her comprehensive 17-page report, Dr. Copley opined: "The opinions that follow are based on knowledge derived from my education, training, and experience. They are based on my review of records cited earlier in this report as well as my own evaluation of CEK and offered with a reasonable degree of medical certainty." (Exhibit E, Dr. Copley's Report)

**F.     CEK is having Mental Health Symptoms from the Prolonged Recovery of his Arm Injury and Meets Criteria for Adjustment Disorder.**

Summarized, Dr. Copley says that CEK is experiencing mental health symptoms related to his prolonged recovery from the surgeries required to attempt to reconnect the right radial head.  CEK mental and emotional conditions meet the criteria for adjustment disorder as defined

by the development of emotional or behavioral symptoms within 3 months of a significant stressor (DSM-5-TR p 51-52). His injury, subsequent surgeries, and restricted physical activity have led to distress, social withdrawal, and maladaptive coping, including excessive video game use at the expense of basic needs (DSM-5-TR. 5, at 51). Both CEK and his parents describe increased frustration, sadness, and social difficulties, including bullying and loss of his main stress outlet—sports—mirroring research that links chronic childhood medical conditions and athletic identity to elevated depression risk. (Pinquart & Shen, 2011) (Exhibit F)

CEK shows cognitive rigidity in attributing blame for his delayed diagnosis and injury to his mother, which may negatively impact their relationship if unaddressed (DSM-5-TR at 51-52). There is no prior mental health history, and his symptoms are not better explained by another disorder or bereavement (DSM-5-TR. supra). According to both clinical criteria and research, ongoing symptoms may persist as long as the stressor remains unresolved (DSM-5-TR, supra). (Exhibit G)

CEK is at risk for future mental health difficulties. Dr. Copley said that CEK has faced bullying and social isolation at school due to his physical disability, impacting on his emotional well-being and self-esteem. His family is concerned about his social and academic needs and is considering alternative schooling (Exhibit E, Dr. Copley's Report, page 5-10). CEK has no prior mental health history, and his current struggles began after his injury. If his limitations persist, he is at risk of developing depression, negative self-image, and maladaptive coping, especially as he navigates adolescence. Research shows that children with chronic medical issues or strong athletic identity are at increased risk of depression. Mental health services are recommended immediately, including weekly psychotherapy and family therapy, to address his social and emotional challenges and help him adapt positively. (Exhibit E, Dr. Copley's Report, at pages 5-

10).

Lastly, Dr. Copley recommends family-based therapy and individual therapy for CEK employing cognitive behavioral therapy or interpersonal therapy models for approximately 2 years. When asked about the time recommended, Dr. Copley said that the 2 years would get him past puberty. (Copley Deposition, page 118, lines10-15).

## G.     CEK's Own Statements.

Variations between the expert's findings and CEK's deposition testimony are matters for cross-examination but do not render the expert's methodology unreliable. See *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1021 (7th Cir. 2000). Courts within the Tenth Circuit have echoed similar principles regarding the admissibility of expert testimony under *Daubert*. For example, in *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 883 (10th Cir. 2005), the court affirmed that the *Daubert* inquiry remains "a flexible one" and that the focus is appropriately placed on the expert's methodology rather than the conclusions reached. The Tenth Circuit has further recognized that challenges to data gaps or alleged methodological flaws typically go to the weight of the evidence, not its admissibility. See *Bitler v. A.O. Smith Corp.,* supra. ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

## H.     Prior Injuries and Military Family Factors.

Dr. Copley's awareness of these issues forms part of her clinical assessment. The presence of multiple stressors is not a basis for exclusion but rather for the factfinder to weigh in assessing causation and the complexity of the CEK injury and Plaintiffs' cause of action. (Exhibit E, Dr. Copley's Report, page 6).

## CONCLUSION

Dr. Copley's testimony is grounded in experience and sound clinical practice, supported by her qualifications, and meets the standards of reliability and relevance set forth in *Daubert* and its progeny. Dr. Copley's testimony will aid the trier of fact in determining all of CEK's injuries, mental and physical, which are recoverable in this negligence case. Plaintiffs respectfully request that the Court deny Defendant's Motion to Exclude and permit Dr. Copley's expert testimony for consideration by the trier of fact.

Respectively submitted,

By */s/ Steven Hornbaker*
**STEVEN HORNBAKER, of counsel #08062**
and Craig J. Altenhofen
ALTENHOFEN LAW OFFICE, CHARTERED
117-A W. 8th Street
Junction City, Kansas 66441
T: (785) 762-2100 F: (785) 762-2291
E-mail: caltenhofen@altenhofenlawlaw.com
E-mail: steve@altenhofenlaw.com
Attorneys for Plaintiffs

and

**BARRY A. CLARK, #13083**
CLARK & PLATT, CHTD
417 Poyntz Avenue
Manhattan, Kansas 66502
Telephone: (785) 539-6634
Facsimile: (785) 539-2617
E-mail: barry@clarkplatt.com
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of August, 2025, the foregoing Response in Opposition to Defendant's Motion to Exclude Expert Testimony of Larae Copley, M.D. was electronically filed with the clerk of court using the CM/ECF system which shall send notification to counsel of record.

By */s/ Steven Hornbaker*
**STEVEN HORNBAKER, #08062**